GAUDIN, Judge.
The appellant in this unique workmen’s compensation case is Janice Preston, who worked for the YMCA for 15 years before a severe mental condition caused hospitalization and subsequent total disability. Preston sued for benefits in the 24th Judicial District Court where a trial judge dismissed her claims, stating that her mental status (and inability to work) "... was a deteriorating process which occurred over an extended period of time ...”
On appeal, Preston contends (1) that she did in fact suffer an identifiable, work-related accident or (2) that, in the alternative, a series of identifiable, work-related accidents resulted in her disability.
In ruling against the plaintiff, the trial judge cited and relied on Sparks v. Tulane Medical Center Hospital and Clinic, 546 So.2d 138 (La.1989).
We affirm, finding that Sparks is controlling and that the present posture of workmen’s compensation law does not allow Preston to recover.
In Sparks, the Supreme Court of Louisiana, for the first time, addressed this issue: Is a mental injury induced by mental stress compensable when caused by a significant employment incident although not accompanied by any apparent signs of physical trauma? The Court said yes,[1] deciding that Sedonia Sparks proved that she had suffered a disabling injury caused by an accident, i.e., an unexpected and sudden employment incident. On April 6, 1987, Sparks left work, complaining that she was too upset to perform her duties because other employees threatened her safety. Sparks had previously been threatened, but the April 6th threats caused her to suffer a compensable “injury by accident.”
The Court, in Sparks, added this at page 147:
“We emphasize, however, that a mere showing that a mental injury was related to general conditions of employment, or to incidents occurring over an extended period of time, is not enough to entitle the claimant to compensation. The mental injury must be precipitated by an accident, i.e., an unexpected and unforeseen event that occurs suddenly or violently.”
Preston’s alleged unexpected and unforeseen event that occurred suddenly or violently was a June 6, 1989 drowning in a West Bank YMCA swimming pool.
Preston, the YMCA's aquatics director with an office in Metairie on the East Bank, felt personally responsible for any dereliction of duty by lifeguards. She also felt personally responsible for a YMCA drowning which occurred in December of 1985, and also for a heart attack suffered by a YMCA swimmer in October, 1988. The attack took place in the men’s locker room. Then came the drowning on June 6, 1989.
Also stressful during Preston’s employment was the lack of job security caused by the YMCA’s financial difficulties.
One week before the last drowning on June 6, 1989, Dr. Sidney Smith, a psychiatrist, found Preston suffering from major *1183 depression combined with mixed personality disorder. He recommended hospitalization. Preston saw Dr. Smith on June 9 and 14,1989 and did not mention to him the June 6th drowning.
Further complicating Preston’s life, shortly after June 6th, was the loss of her two assistants. One took a medical leave of absence, not related to YMCA employment, while the other resigned. This left Preston with no support staff. Both of Preston’s assistants testified that for at least six months before the June 6th drowning, she (Preston) had been unable to work satisfactorily due to depression and stress.
Preston’s mental problems, according to the record, started many years ago. She did not have a good relationship with her mother while her father was an alcoholic. Preston threatened suicide while a student at LSU.
In his “Reasons for Judgment,” the trial judge stated:
“At trial, Janice Preston sought to PROVE THAT A DROWNING WHICH OCCURRED on June 6, 1989 was the accident which CAUSED HER MENTAL INJURY. THE PREPONDERANCE OF THE EVIDENCE AT TRIAL SHOWED THAT HER MENTAL CONDITION, TREATMENT THEREOF,' AND INABILITY TO FUNCTION AT WORK WAS A DETERIORATING PROCESS WHICH OCCURRED OVER AN EXTENDED PERIOD OF TIME. Her mental condition was related TO GENERAL CONDITIONS OF EMPLOYMENT, life’s circumstances unrelated to employment. Whatever job related incidence THAT MAY HAVE AFFECTED HER MENTAL CONDITION OCCURRED OVER AN EXTENDED PERIOD OF TIME AND ANY MENTAL INJURY WAS NOT PRECIPITATED BY ONE DISCERNABLE EMPLOYMENT RELATED EVENT. IN FACT, THE DIAGNOSIS for which Janice Preston was ultimately HOSPITALIZED WAS MADE BEFORE the June 6,1989 incident, as well as the RECOMMENDATION FOR HOSPITALIZATION PRIOR TO THAT DATE.
“The plaintiff failed to prove by a preponderance OF THE EVIDENCE THAT SHE SUSTAINED AN INJURY BY ACCIDENT THAT IS COM-PENSABLE UNDER THE LOUISIANA WORKER’S Compensation Act.”
Almost all of the medical testimony in the record is supportive of the trial judge’s findings. The only testimony favorable to Preston was provided by Dr. Robert Davis, who said that the June 6th drowning caused appellant’s hospitalization. The trial judge, however, chose to accept the testimony of the other psychiatrists, who said that Preston’s problems were in place long before June 6, 1989.
Unless the Supreme Court or state legislature chooses to extend the Sparks holding by saying that a series of happenings, some not even related to employment, can constitute an “injury by accident,” Preston and similarly situated claimants are not covered by workmen’s compensation statutes.
In Sparks, the plaintiff had been able to perform her duties before being threatened. Preston, on the other hand, had serious problems with her employment and was not performing satisfactorily before June 6, 1989. The last drowning wasn’t a sudden or significant employment incident. It was just one of many upsetting occurrences, evidenced best, probably, by Preston’s failure to mention this drowning to Dr. Smith during her two sessions just after June 6th.
AFFIRMED.

. Sparks was a close call, with three dissents.