140 Nev., Advance Opinion 38

IN THE SUPREME COURT OF THE STATE OF NEVADA

|  |  |
|---|---|
| IN THE MATTER OF THE APPLICATION OF NAME CHANGE FOR CHRISTOPHER LOWRY. | No. 87153 |
| CHRISTOPHER LOWRY, Appellant. | **FILED** JUN 06 2024 ELIZABETH A. BROWN CLERK OF SUPREME COURT BY_____ CHIEF DEPUTY CLERK |

Appeal from a district court order denying a petition for an adult change of name. Eleventh Judicial District Court, Pershing County; Jim C. Shirley, Judge.

*Reversed and remanded.*

Christopher Lowry, Lovelock,
Pro se.

---

BEFORE THE SUPREME COURT, HERNDON, LEE, and BELL, JJ.

*OPINION*

By the Court, HERNDON, J.:

While in prison, appellant Christopher Lowry filed a petition to legally change his name for religious reasons. The district court denied Lowry's petition based on the legislative history of the name-change statutes. It found that because Lowry was convicted of a sexual offense against a minor and could not seal his records, he also could not change his name. Lowry contends this was error. We agree and hold that the name-change statutes permit incarcerated felons to change their names,

24-19784

regardless of the offense for which they were convicted, as long as good reason exists for the change. The district court's concerns about certain felons obviating the record-sealing requirements are not salient here because the name-change statutes require that an applicant's criminal history follows them to their new identity. The district court erred in its analysis and applied an incorrect legal standard to Lowry's petition, so it lacked a substantial basis to deny Lowry's requested name change. Accordingly, we reverse the order denying the name-change petition and remand the matter to the district court for a determination under the correct standard.[1]

## BACKGROUND

Lowry was convicted of attempted lewdness with a minor, a felony offense. As a result, he is currently incarcerated at the Lovelock Correctional Center. While incarcerated, Lowry sought to legally assume the name Dominic Vito Giambatista Billini for religious reasons. He petitioned the district court to change his name. Although no objection was filed, the district court denied the name-change petition. It reasoned that Lowry was an inmate convicted of a felony against a minor, so public policy and the record-sealing statutes precluded him from changing his name. Lowry appealed.

## DISCUSSION

*The district court applied an incorrect legal standard to Lowry's petition*

Lowry asserts that the district court erred by applying the statutes pertinent to sealing one's records rather than the statutes related to name-change petitions. We review the denial of a name-change petition

---

[1]This appeal is unopposed, as no objection was filed to the name-change petition below. *See* NRS 41.290(1) (providing for the filing of written objections to name-change petitions).

for an abuse of discretion. *In re Salazar*, 138 Nev., Adv. Op. 69, 518 P.3d 873, 874 (2022). A "district court abuses its discretion when it denies a petition for a name change without providing any substantial basis for doing so." *Id.*

The district court began by analyzing the legislative history of the name-change statutes. It erred by doing so before it interpreted the plain meaning of those statutes. *Cf. Sonia F. v. Eighth Jud. Dist. Ct.*, 125 Nev. 495, 499, 215 P.3d 705, 707 (2009) ("When a statute is facially clear, this court will give effect to the statute's plain meaning and not go beyond the plain language to determine the Legislature's intent."). As we explain, the name-change statutes are unambiguous; thus, we need not address their legislative history.

*Incarcerated individuals may petition to change their names*

We first address the district court's suggestion that public policy generally prohibits felons from changing their names, at least before the time when they can also ask to seal their criminal records. This presents a question of law, which we review de novo. *Nev. Dep't of Corr. v. York Claim Servs., Inc.*, 131 Nev. 199, 203, 348 P.3d 1010, 1013 (2015). Our resolution of that question calls for us to construe the name-change statutes, which we also perform de novo. *Id.* In interpreting the statutes, "our analysis begins with the text." *Sierra Nev. Adm'rs v. Negriev*, 128 Nev. 478, 481, 285 P.3d 1056, 1058 (2012). "We construe a plain and unambiguous statute according to its ordinary meaning." *Id.*

NRS 41.270-.290 supply the relevant standards for a court to apply to a name-change petition. Pursuant to those statutes, "[a]ny natural person, except an unemancipated minor, desiring to have his or her name changed may file a verified petition with the clerk of the district court of the district in which the person resides." NRS 41.270. The statutes do not

exclude convicted felons, and "omissions of subject matters from statutory provisions are presumed to have been intentional." *Dep't of Tax'n v. DaimlerChrysler Servs. N. Am., LLC*, 121 Nev. 541, 548, 119 P.3d 135, 139 (2005).

In fact, the statutory scheme contemplates that some applicants may have criminal records. It requires petitioners to state whether they have been convicted of a felony, and petitioners with criminal records must provide a complete set of fingerprints with their petition. NRS 41.270. If the petition is granted, a copy of the order and the fingerprints go to the Central Repository for Nevada Records. NRS 41.290(3). And in determining whether to grant a name-change petition, NRS 41.290(1) requires the court to "specifically take into consideration the applicant's criminal record, if any[.]" These provisions would not exist if the Legislature intended to prohibit convicted felons from petitioning to change their names. Therefore, we hold that convicted felons may petition to change their name so long as they otherwise comply with the name-change statutes.

*A change of name does not circumvent the record-sealing requirements*

The district court found that a person convicted of a felony against a child cannot petition to change their name because a person with such a conviction would not be able to seal their records pursuant to NRS 179.245. It expressed concern that a felon changing his name would circumvent the waiting period for sealing their records. However, the name-change statutes contain provisions to obviate that concern.

Nothing in the name-change statutes automatically seals a petitioner's criminal record. *See* NRS 41.270-.290. As noted, they include a logistical provision to certify the name change in the Central Repository for Nevada Records of Criminal History. NRS 41.290(3). An inmate's record

thus would accompany him with his new name—it would not be automatically sealed, as the district court feared. These principles are reflected in the fact that it is more difficult for an individual to satisfy the record-sealing statutes than the name-change statutes. The prerequisites to sealing one's record are more restrictive than those for changing one's name. *Compare* NRS 41.290, *with* NRS 179.245. The benefits conferred upon someone with a sealed record are far higher as well. Upon sealing, that person reobtains the rights to vote, hold office, and serve on a jury; the proceedings underlying their offense are "deemed never to have occurred." NRS 179.285(1)(a). By contrast, the name-change statutes do not contemplate such benefits. The Legislature created separate subchapters to address separate issues.

        The district court may have analogized the separate sets of statutes in an attempt to glean the purpose of NRS 41.290(1)'s requirement that the court consider the applicant's criminal record before deciding whether to grant a name-change petition. We observe that the requirement must be read in harmony with the surrounding name-change statutes. *See Barney v. Mt. Rose Heating & Air Conditioning*, 124 Nev. 821, 827, 192 P.3d 730, 734 (2008) ("Whenever possible, we will interpret a statute in harmony with other rules and statutes."). The requirement that "the court shall specifically take into consideration the applicant's criminal record," NRS 41.290(1), serves both logistical and substantive purposes that harmonize it with the surrounding statutory provisions. Logistically, the court must consider whether the applicant has a criminal record before it can fulfill any duty to "transmit a certified copy of the order to the Central Repository for Nevada Records of Criminal History[.]" NRS 41.290(3). Substantively, the court must consider the applicant's criminal record, in addition to any other relevant evidence, to determine whether "good reason exists" for the name

change. NRS 41.290(1). We need not decide here what constitutes good reason, as that is a decision best left, in the first instance, to the discretion of the district courts based on the facts and circumstances present in a given case.

## CONCLUSION

The district court resorted to the legislative history of the name-change statutes without first considering their plain language and compounded that misstep by conflating those statutes with the record-sealing statutes. As a result, the district court lacked a substantial basis to deny Lowry's petition. Therefore, we conclude that the district court abused its discretion in denying Lowry's petition. Application of the governing statutes, NRS 41.270-.290, demonstrates that individuals presently incarcerated, regardless of their offense, may file a name-change petition with "the clerk of the district court in which the person resides." NRS 41.270.

Accordingly, we reverse the order of the district court and remand this matter for proceedings consistent with this opinion.

_____, J.
Herndon

We concur:

_____, J.
Lee

_____, J.
Bell

